1

2

3   FILED

4   2010 MAY 27  AM 11: 16

5   CLERK US DISTRICT COURT
    SOUTHERN DISTRICT OF CALIFORNIA

6   BY_____DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  UNITED STATES OF AMERICA, | CASE NO. 08cv1633 BEN (AJB) |
| 10                    Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| 11       vs. | |
| 12  STEPHEN CARTER *et al.*, | [Dkt. No. 77] |
| 13                    Defendants. | |

## INTRODUCTION

Before the Court is Plaintiff United States' motion for summary judgment. (Dkt. No. 73.) The United States seeks to foreclose its federal tax liens against certain real property. No Opposition to the motion was filed as all other parties that may have had any interest in the property have disclaimed any interest, had default judgment entered against them after notice, or entered into a stipulation with the United States concerning lien priority. For the reasons that follow, the motion for summary judgment is **GRANTED**.

## BACKGROUND

This case was brought by the United States to reduce to judgment certain federal income tax liabilities of Burtice Wade Carter and to foreclose on the liens against a parcel of real property at 864 Pamela Lane in El Cajon, California. In 1998, federal tax assessments were made against Burtice Wade Carter for unpaid federal income taxes, penalties, and interest for the tax year ending December 31, 1995. (Decl. of Julie Piazza, Exs. 1-2.) Liens arose on the date of assessment, September 7, 1998, and were perfected with the filing of a notice of the liens with the San Diego County Recorder's Office against Carter and his wife. (Decl. of Lauren M. Castaldi, Ex. 9.) A notice was re-filed, as required

by statute, on December 19, 2007 in addition to a notice against the Pamela Properties Trust on March 30, 2007. (Castaldi Decl., Ex. 10; Piazza Decl., Ex. 4.) Despite notice and demand for payment, Carter failed to pay the assessments and, as of November 2009, owed the United States $1,059,395.21. (Piazza Decl. ¶ 6, Ex. 3.)

Carter and his wife acquired title to the property in 1985 with a deed of trust in favor of Sumitomo Bank of California; refinanced in 1992 with a deed of trust in favor of Citibank, National Association (successor to California Federal Bank). (Castaldi Decl., Ex. 1.) On May 5, 1992, the Carters purported to transfer the property to "Pamela Properties" by quitclaim deed for no consideration and then purported to transfer it back to the Carters on October 14, 1992 for no consideration, acknowledging in the transfer back that "Pamela Properties" was "an entity not capable of taking title." (Castaldi Decl., Exs. 3-4.) Finally, on November 30, 1992, the Carters purported to transfer the property to the Pamela Properties Trust, Richard Chieppo, Trustee ("the Trust"), via grant deed for no consideration and without payment of a transfer tax. (Castaldi Decl., Ex. 7; Decl. of Paula Davis ¶ 3.) Despite the purported transfer of the property, Carter continued to live in the property and paid the mortgage, taxes, utilities, and expenses associated with the property until his death. (Davis Decl. ¶¶ 4-7.)

All parties to the action, identified as having any possible claim to the property have disclaimed any interest in the property, had default judgment entered against them, or entered into a stipulation with the United States regarding lien priority. (Dkt. Nos. 3, 54, 59, 62, 75 (disclaimed interest); Dkt. Nos. 54, 83 (default judgment); Dkt. No. 33 (stipulation).)

## DISCUSSION

Under 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The statute is broad and "meant to reach every interest in property that a taxpayer might have." *Drye v. United States*, 528 U.S. 49, 56 (1999) (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-720, (1985)). The United States' liens arose on the assessment and attached to all of Carter's interests, including his interest in the El Cajon property.

1       The only question the Court need address is whether Carter's purported transfer to the Trust

2   altered his interest in the El Cajon property.  The Court finds Carter interest in the property was not

3   altered by his purported transfer of the property to the Trust for three reasons.  First, the Trust was

4   only a nominee for Carter.  Second, the transfer was fraudulent under the California Uniform

5   Fraudulent Transfer Act ("UFTA"), Cal Civ. Code § 3439.  Third, the Trust has disclaimed any

6   interest in the property.

7       The Trust was only a nominee of Carter.  Property, for purposes of § 6321, includes

8   "property held by a third party if it is determined that the third party is holding the property as a

9   nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th

10   Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977)).  Factors

11   considered in nominee determination include:

12       (a) No consideration or inadequate consideration paid by the nominee; (b)
    Property placed in the name of the nominee in anticipation of a suit or

13   occurrence of liabilities while the transferor continues to exercise control
    over the property; (c) Close relationship between transferor and the

14   nominee; (d) Failure to record conveyance; (e) Retention of possession by
    the transferor; and (f) Continued enjoyment by the transferor of benefits of

15   the transferred property.

16   

17   *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 n.1 (5th Cir. 2000) (quoting *Towe*

18   *Antique Ford Found. v. IRS*, 791 F. Supp. 1450, 1454 (D. Mont. 1992)).  Here, no consideration

19   was paid, the purported transfer was made to avoid tax liabilities from earlier tax years, Carter

20   maintained possession of the property, including all financial responsibilities for it, and Carter

21   continued to enjoy the benefits of the property.  (Castaldi Decl., Ex. 7; Davis Decl. ¶¶ 2-7.)

22   Additionally, the Trust has disclaimed any interest in the property, further indicating the Trust was

23   merely a nominee of Carter.

24       The transfer from Carter to the Trust was also fraudulent under the UFTA.  "The UFTA

25   permits defrauded creditors to reach property in the hands of a transferee." *Mejia v. Reed*, 31 Cal.

26   4th 657, 663 (2003).  "Under the UFTA, a transfer is fraudulent, both as to present and future

27   creditors, if it is made with actual intent to hinder, delay, or defraud any creditor of the debtor.

28   Even without actual fraudulent intent, a transfer may be fraudulent as to present creditors if the

08cv1633

1  debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor

2  was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

3  *Id.* at 664 (citing § 3439.04-05) (internal quotations and citations omitted).

4       Carter's former wife stated that Carter placed the property in the Trust to avoid IRS

5  obligations and Carter acknowledged as much in his divorce papers which indicated the property

6  was placed in a trust to avoid a taking by the IRS.  (Davis Decl. ¶ 2; Castaldi Decl., Ex. 11.)

7  Section 3439.04 also lists a number of factors to consider in determining actual intent, including:

8  whether the debtor retained possession or control of the property after the transfer; whether the

9  value of the consideration received by the debtor was reasonably equivalent to the value of the

10  property transferred; and whether the transfer occurred shortly before or shortly after a substantial

11  debt was incurred.  Carter never gave up possession of or responsibility for the property, no

12  consideration was paid for the property, and the transfer was an attempt to avoid IRS collection

13  efforts.  (Davis Decl. ¶¶ 2, 4-7; Castaldi Decl., Ex. 7.)

14       Finally, the Trust has disclaimed any interest in the property.  This is consistent with the

15  Trust only holding the property as a nominee for Carter and a fraudulent transfer.

16       As the Trust was a mere nominee of Carter and the purported transfer was fraudulent, the

17  United States is entitled to enforce its liens against the El Cajon property.

**CONCLUSION**

19       The United States motion for summary judgment is granted.  The United States has valid

20  and subsisting federal tax liens which attache to the property of Burtice Wade Carter, including the

21  real property commonly known as 864 Pamela Lane, El Cajon, California, 92020.  The Court

22  orders the tax liens encumbering the real property be foreclosed.

**IT IS SO ORDERED.**

DATED: May 27, 2010

Hon. Roger T. Benitez
United States District Court Judge

- 4 -

08cv1633